## C. F. SLOAN v. H. C. SCHOMAKER, ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 1, 1890—Decided October 6, 1890.
[To be reported.]

(*a*) In an action for false imprisonment and malicious prosecution, the plaintiff's testimony showed that he went with his father to the defendants' store, to complain of an alleged insult to his mother a few days previously, and in a violent manner remarked that he would like to thrash the man who insulted her.

(*b*) The defendants, having twice ordered the plaintiff and his father to leave the store, sent for an officer and told him to arrest them. The officer took them before a magistrate on a charge of " breach of the peace in using threats and inciting to riot." They were committed for trial, but afterwards discharged on habeas corpus:

1. The plaintiff's own case showing that he was in the wrong, that when arrested he had no intention of obeying the order to leave the store, and that the substantial charge, to wit, the breach of the peace, was true, he was not entitled to recover either for false imprisonment or malicious prosecution.

2. Whether to a declaration charging false imprisonment and assault and battery, an amended statement of claim may be filed, under the act of May 25, 1887, P. L. 271, charging, additionally, that the defendants falsely and maliciously and without probable cause directed and procured the arrest of the plaintiff, not considered.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCH-
ELL, JJ.

No. 172 January Term 1890, Sup. Ct.; court below, No. 204
December Term 1886, C. P. No. 3.

On December 1, 1886, Charles F. Sloan brought trespass
against Henry C. Schomaker and Henry W. Gray.  The plaint-
iff subsequently filed a narr charging, in the first count, a
false imprisonment, and in the second, an assault and battery
of the plaintiff by the defendants.  The defendants pleaded
not guilty.  The issue thus formed was tried October 24, 1887,
when a verdict for the plaintiff for $2,500 was rendered, upon
which judgment was entered.  Subsequently the judgment was
opened and a rule for a new trial was made absolute.

On April 15, 1888, by leave of the court, the plaintiff filed
an " additional statement of his claim," drawn under the pro-
visions of the procedure act of May 25, 1887, P. L. 271, aver-
ring that the defendants falsely and maliciously, and without
probable cause, directed and procured the arrest of the defend-
ant, charged him before a magistrate with breach of the peace
and inciting to riot, and caused him to be committed to prison,
etc.  In pursuance of a rule to plead, the defendants entered
the plea, not guilty.

At the second trial on October 21, 1889, the following facts
were shown:

The defendants were officers of the Schomaker Piano-forte
Manufacturing Company.  On May 25, 1885, between nine
and ten o'clock A. M., the plaintiff, accompanied by his father,
entered the company's store at No. 1109 Chestnut street, and
stated to the defendant, Schomaker, that his mother had been
a customer in the store a few days previously, and that the
clerk who waited upon her had insulted her.  Mr. Schomaker
said that he knew nothing of it, and that Mr. Gray, the other
defendant, had waited on the lady when she was in the store.
As to the subsequent occurrences, the plaintiff testified:

"Mr. Gray then came over to where we were, and I asked
him why he had insulted my mother?  I asked him why he
asked her if she was the keeper of a fancy house, and he told me
to get out of the store.  Father then spoke up and asked him
if he asked her if she kept a fancy house?  He said, 'Suppose

### Statement of Facts.

I did, what are you going to do about it?' I then told him he would have to prove it. He then told a party, I did not see who they were, to go and get an officer. The officer was close by and came in almost immediately. When the officer came in we were moving to the door and almost got there. Mr. Gray said to the officer, as he came in, 'Arrest these men!' The officer said, 'What for?' Mr. Gray said, 'Arrest them and I will make a charge against them.' The officer then said to us, 'You will have to go with me.' As we were going out of the store he turned back to Mr. Gray and said, 'You will have to come down.' He said he would be there. The officer then took us down Chestnut street to the corner of Sixth, and then said for us to wait to see if Mr. Gray was coming. We went with the officer to Magistrate Durham's office, which was then on Sixth above Chestnut."

After stating that the witness and his father were committed by the magistrate, and were taken to the central station, and afterward to the Moyamensing prison, where they remained three days, until they were released on bail, the plaintiff testified further:

"The conversation between me and Mr. Gray occurred in the front part of the store, near the door, and I said we were going out when this conversation took place. When the officer entered we were about ten or fifteen feet from the door. I did not use any violent language toward Mr. Gray, nor use any threat. At the time this conversation took place, the only ones I remember present were Mr. Schomaker and Mr. Gray, and some young men I do not remember."

Cross-examined. ". . . . . When we went in I don't recollect what Mr. Gray was doing; he came over from the rear of the store to where we were. I think Mr. Schomaker said something to Mr. Gray as he was coming to us. He came over to us; when we came together we were not far from the door, we were about ten or fifteen feet. . . . . Q. Did you say, if you had the man who insulted your mother you would like to thrash him? A. I think I did, to my father; possibly Mr. Schomaker might have heard it. I don't know whether it was addressed to Mr. Gray or Mr. Schomaker. I believe I made that remark to my father, that if I had the clerk who insulted my mother I would like to thrash him. Mr. Gray did not tell us it was a

mistake, the lady was not insulted and that we must go else-
where to get satisfaction, I was interfering with his business
and must go away. . . . . Mr. Gray told me to leave the store
twice before the officer came. Q. What time intervened be-
tween the first and second time? A. Part of a minute. While
we were standing there quietly, he sent for an officer. . . . . "

Leander Sloan, the plaintiff's father, testified: "We stated
to Mr. Schomaker our grievance. We stated to Mr. Scho-
maker who we were. My son had the first conversation with
him. He said his mother was in the store previous on busi-
ness, and one of the clerks had insulted her. Mr. Schomaker
said he knew nothing about it. He said Mr. Gray must have
been the man who was waiting on her. Mr. Schomaker was
slightly acquainted with my wife. Mr. Schomaker called
Mr. Gray. My son said, as nearly as I can remember, if he
was the man dealing with his mother ; I think he said, you
must be the man who insulted my mother. He seemed to be
in a passion, and ordered us out of the store. I asked him if
he asked my wife if she kept a fancy house. He said 'Sup-
posing I did, what are you going to do about it?' He said,
'Get out of my store, both of you, or I'll kick you out.' I was
trying to get some explanation, and he sent out for a police
officer. I did not feel afraid of an officer. They sent for an
officer and said, 'Arrest these men, I will make a charge
against them.' The officer said 'You will have to come with
me.' We went quietly. We were in the store about five
minutes. I think he, my son, said it to me, that he felt like
thrashing the man who insulted his mother. There was no
profane language used on either side. We were a short dis-
tance from the door. The front door was shut during the
conversation. There was no crowd in front of the store, far
from it. We made no more noise in the store than an ordinary
conversation."

The plaintiff put in evidence the docket of Magistrate Dur-
ham, showing the arrest of Charles Sloan and Leander Sloan
by officer Dannenhower, charged with "breach of the peace in
using threats and inciting to riot," and a binding over of said
defendants, after hearing, to appear at the next Court of Quar-
ter Sessions to answer the charge. It was also shown that the
plaintiff and his father were afterwards discharged upon habeas

Charge of Court below.

corpus, by ALLISON, P. J., sitting in the Court of Quarter Sessions.

The plaintiff having rested, the defendants presented testimony tending to prove that the plaintiff and his father, although assured by the defendants that there had been no insult, behaved in a very boisterous and violent manner, threatening fight and making such a noise as to drive away customers who were in the store, and cause quite a crowd to collect in front of it; that they remained in the store for about twenty minutes, although repeatedly ordered to leave, and that when one of the defendants said he would send for an officer to put them out, one of the Sloans replied, "Damn your officer; send for him;" that immediately upon the officer's coming, they quieted down; that the defendants were directed by the officer to go to the office of the magistrate, and when they did so, they said nothing until called to the stand as witnesses, the charge against the plaintiff being made by the officer himself.

At the close of the testimony the court, GORDON, J., charged the jury as follows:

This is an action of trespass by force and arms, where the plaintiff seeks damages for personal injuries, alleging unlawful arrest and restraint of liberty. When a citizen complains that he has been injured, he is entitled to a faithful hearing.

This happened in the store of the defendants; and it consisted in the arrest of the plaintiff by a police officer directed by the defendants. No one has a right in a dwelling or a store of another, unless upon an invitation express or implied. When one enters a public store by implied permission, it is his duty to leave, when ordered, with reasonable speed. The owner can use reasonable force to eject an intruder, or obtain an officer of the beat to do so; and if the intruder remains after he is ordered out, the owner would not be responsible for the consequences.

He who charges another with crime and by reason of the charge restrains him of his liberty is responsible if the arrest is false. [If the plaintiff's story is to be believed, as the plaintiff and his father have told it, it is a case entitling the plaintiff to recover.] [2] If the defendants' story is to be believed that makes a good defence.

Charge of Court below.

There is a conflict of testimony from the beginning to the end. The plaintiff says he entered the place to make inquiry respecting an insult to his mother, and that he was met by an almost immediate order by Mr. Gray for an officer to arrest him. The plaintiff says he was peaceable and made no noise. If this was true, the arrest was illegal and an injury to the plaintiff, and the defendants are responsible in damages. [If the plaintiff tells the truth, Mr. Gray was the aggressor, and he is, in whole or in part, substantiated by his father.] [3]

Mr. Gray testifies that he came towards the front of the store and had a conversation with the plaintiff, and he told him it was a mistake, and attempted to give reasonable explanation, but the plaintiff became very noisy and threatened to mash some one; that Mr. Gray then sent his son for a police officer, and when the officer came, Mr. Gray told him to take the plaintiff and his father out and to arrest them. If that is so, Mr. Gray cannot be held responsible. . . . . .

An act of a police officer must be justified by facts in order to relieve the party from responsibility. If Mr. Gray did not make the charge he is not responsible. If all that he did was to be sworn as a witness, and then told the truth, what the magistrate then did would not make Mr. Gray responsible.

If you find for the plaintiff, you will be brought to the question of damages, and in fixing the damages, reason and good sense ought to be your guide. If, technically, the arrest was unlawful, but contributed to by the plaintiff, the damages should be nominal. The damages are to be governed by the manner of infliction, and the character of the injury.

The defendants request the court to charge:

1. The defendants are not liable for a mistake of the officer in preferring the charge before the magistrate; nor for the mistake of the magistrate in committing the plaintiff to prison.

Answer: Affirmed.

2. The entrance by the Sloans of the defendants' store during business hours, not on business, but for the purpose of obtaining an explanation or satisfaction for an alleged insult to Mrs. Sloan, was by sufferance only, and it became their duty to leave the store immediately, when ordered to do so, and to seek their redress, if entitled to any, according to law; and if they did not, they became resisting intruders liable to be removed by force.

Answer: Affirmed.

3. For the plaintiff to go into the defendants' store during business hours, and there to accuse them of insulting his mother, and to follow up the accusation by saying to them, "I feel like thrashing the man that insulted my mother," or, "I want satisfaction, and want to mash the man who insulted her," was an unjustifiable act, in view of the time and the place, and such language was threatening language, and tended to provoke a breach of the peace, and it justified the defendants in ordering the plaintiff into the custody of the officer, without being answerable in damages for so doing, as in such case the arrest was provoked and justified by the illegal conduct of the intruders themselves.

Answer: Affirmed.

4. If the conduct of the Sloans in the defendants' store was so threatening and noisy as to attract a crowd in the public street in front of the defendants' store, such conduct was in itself a breach of the peace and justified the plaintiff's arrest, and your verdict should be for the defendants.

Answer: Affirmed.

The jury returned a verdict for the plaintiff for $1,000. A rule for a new trial having been discharged, judgment was entered, when the defendants took this appeal, specifying that the court erred:

1. In permitting the plaintiff to amend his declaration by adding a count for malicious prosecution.

2, 3. In charging the jury as set forth in [ ] ² ³

*Mr. Amos Briggs*, for the appellants:

1. Prior to the act of May 25, 1887, P. L. 271, counts for false imprisonment and for malicious prosecution could not have been joined, the two offences being essentially different in their nature, and the limitation of actions therefor being different. The act of 1887 contains no warrant for joining them. Nor can the plaintiff introduce by amendment a new cause of action, or one differing substantially from the cause which he has declared and joined issue on, and maintain both: Gardner v. Post, 43 Pa. 19; Root v. O'Neil, 24 Pa. 326; Royse v. May, 93 Pa. 454.

Arguments.

2. The degree of weight to be given to the testimony of each witness, is for the jury, not the court, and the judge's manner of referring to the witnesses in this case was error: Ott v. Oyer, 106 Pa. 17; Penna. Canal Co. v. Harris, 101 Pa. 92. But the fact is clearly established by the testimony of the Sloans themselves, that they were the aggressors, and it was erroneous for the court to tell the jury that, if true, it made Gray the aggressor. In any event, the defendants are not liable for the conduct of the officer after he had removed the Sloans from the store: Gilliford v. Windel, 108 Pa. 146. On the conceded facts, they brought about and provoked their own arrest.

*Mr. Charles A. Chase* (with him *Mr. Thomas W. Barlow* and *Mr. Charles C. Lister*), for the appellee:

1. The amendment to the pleadings was not the addition of a count for malicious prosecution. The plaintiff filed simply a statement of the facts upon which his suit was brought. Having pleaded to and gone to trial under it, the defendants cannot now insist on the objection which they seek to raise: Erie Iron Works v. Barber, 118 Pa. 6. The plaintiff, however, had a clear right to make the amendment. Whether the facts alleged in the statement of claim would have brought the cause of action stated under the head of case, or that of trespass, is of no importance since the act of May 25, 1887, P. L. 271: Jones v. Gordon, 124 Pa. 263; Erie Iron Works v. Barber, supra; Williams v. Hay, 120 Pa. 485.

2. The defendants cannot complain of the parts of the charge assigned for error, which must be considered in connection with the other parts of it: Horton v. Coal Co., 2 Penny. 26; Commercial N. Bank v. Henninger, 105 Pa. 496. Nor can they complain of a failure to give binding instructions which they did not ask for: Penna. R. Co. v. Page, 21 W. N. 52. Such instructions, however, they were not entitled to ask for. If the testimony for the plaintiff is true, as the jury have found to be the case, the defendants are responsible for ordering an illegal arrest, made when the plaintiff was quiet, peaceable and orderly, and after he had started to go out and had actually gone a distance of forty feet toward the exit.

3. The answer to the argument that the defendants owned

the store and therefore had a right to put the plaintiff out, is very simple; they neither did nor attempted it. What they intended to do was to prosecute him for a crime unknown to the law. The jury have found that he was actually prevented from leaving the store by the violent conduct of the defendants, and by their sending for an officer and having him make the arrest. A party who procures or abets an illegal arrest, or joins in a prosecution without probable cause, is liable in damages: Baird v. Householder, 32 Pa. 168; Sullivan v. Jones, 2 Gray 570; Cole v. Radcliffe, 4 W. Va. 332; Huggins v. Toler, 1 Bush 193; Frantz v. Lenhart, 56 Pa. 365; Kramer v. Lott, 50 Pa. 495; Harris v. Bennet, 1 Phila. 175; Cotton v. Huide-koper, 2 P. & W. 149; Walbridge v. Pruden, 102 Pa. 1.

OPINION, MR. JUSTICE MITCHELL:

On the evidence in this case it is entirely clear that plaintiff was not entitled to recover. He went to defendants' store upon an errand that was likely to produce a breach of the peace. The charge, if true as he believed, would naturally and properly make him indignant, and that this was his frame of mind appears from the remark which he admits making, that he would like to thrash the man who insulted his mother. On the other hand, such a charge made persistently to the interruption of business, and especially if unfounded or erroneous, would naturally provoke a hostile spirit on the part of defendants. It did so, and Gray ordered plaintiff out of the store. Both plaintiff and his father admit that this order was given to them twice. It was their legal duty to go. In strict law, defendant might then have used sufficient force to put them out with his own hands. Instead of doing so, he adopted the prudent and commendable course of sending for an officer. Some effort was made by counsel to show that plaintiff and his father were going out, when the officer arrived and arrested them, and plaintiff did testify: " When the officer came in we were moving to the door, and almost got there." But the evidence on the part of plaintiff as a whole shows clearly that he had no intention of going out. He says: " When the officer entered we were about ten or fifteen feet from the door; " and yet, on cross-examination, he says Gray " came over to us; when we came together, we were not far from the door, we were about

ten or fifteen feet." Evidently, what movement there was towards the front of the store was during the interview with Schomaker when they first went in, and not during or after the interview with Gray, in which the orders to leave the store were given. And the spirit in which the plaintiff acted is shown by his father's testimony, that Gray " sent out for a police officer. I did not feel afraid of an officer." It is thus apparent on plaintiff's own evidence that he was in the wrong. It was his duty to leave when ordered to do so. Under the circumstances, as he viewed them, his indignation, as already said, was natural and proper, but the law is plain, and it cannot be too distinctly understood that the public peace is above all considerations of private insult, and those who undertake to get satisfaction by their own acts, especially by going to the other party, after a lapse of time, must be careful to keep within the legal limits, or they will have only themselves to blame for the consequences. The learned judge in his answers to the points laid down the law correctly to the jury, but he took too lenient a view of plaintiff's conduct, and the instructions that "if plaintiff's story is to be believed, he is entitled to recover," and " if plaintiff tells the truth, Gray was the aggressor," cannot be sustained.

The count for malicious prosecution was not included in the original narr, but was added subsequently; but, even if it had been regularly joined at first, the plaintiff's case under it would have been fatally defective. Passing by the question whether defendants ordered the prosecution, or took such part in it as would render them liable, the magistrate's docket shows the charge to be " breach of the peace in using threats and inciting to riot; " and, though riot is rather a large word for the occurrence, yet there were enough persons concerned to have made it a technical riot, and the plaintiff's own evidence shows that the substantial charge, breach of the peace, was not only not without probable cause, but was true in fact. Under no view of his own evidence should he have been allowed to recover.

As this view of the merits disposes finally of the whole case, it is not necessary to consider the question of the amendment, nor the effect of the procedure act of 1887 on the heretofore established rule that no amendment can be allowed which introduces a new cause of action.

Judgment reversed.