Commonwealth *v.* Johnston, Appellant.

486

Argued November 17, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Lewis Tanner Moore,* for appellant.

*John E. Gallagher,* Assistant District Attorney, with him *Charles H. Spaziani,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1970:

Earl F. Johnston was tried before a jury in Northampton County on an indictment charging him with the murder of Charles Pittman, and was found guilty of

voluntary manslaughter. After post-trial motions were denied and a prison sentence imposed, Johnston filed this appeal. We reverse because we conclude that the evidence was insufficient as a matter of law to sustain the conviction.

A brief summary of the pertinent evidence introduced at trial by the Commonwealth is as follows:

During the late afternoon of October 8, 1966, a group gathered for social purposes in a building on a business property of defendant Johnston. Among others, the group included Johnston, Pittman, Mrs. Pittman and Mrs. Wolfe. Strong ill feeling existed between Mrs. Pittman and Mrs. Wolfe, and an argument started between them which culminated in a physical tussle. When the pair were separated, Mrs. Wolfe began to berate Pittman and called him some obscene names. Pittman became angry, drew a knife and threatened to kill her. He chased her from the building and inflicted two knife wounds on her arm as she fled. When he caught up to her, he knocked her to the ground and cut her in the area of the hairline.

Johnston separated the two, led Pittman to his automobile and asked him to leave the premises.[1] Pittman and his wife got in the car. Mrs. Wolfe then threw a brick through the rear window of the Pittman automobile and directed some additional obscenities toward him. Whereupon Pittman jumped from his automobile and chased Mrs. Wolfe into the building with the knife in his hand, saying, "I'm going to kill you."

Johnston had tried to stop Pittman from entering his building, and when this effort failed, he went to his automobile, parked nearby, and secured a loaded .45 automatic revolver. He then followed Pittman in-

---

[1] About one year before, Pittman had engaged in an argument with another individual on the Johnston property and cut him with a knife. As a result, Johnston had barred Pittman from the property for several months.

to the building, grabbed him by the left arm (Pittman had the knife in his right hand) and pulled him back several feet from the area where Mrs. Wolfe was standing. Defendant then said, "Charlie, don't kill that woman in here because I don't want no trouble in my place . . . . Man, you get out of here and leave that woman alone."

Pittman broke away and Johnston started to walk sideways. Pittman then approached Johnston with the knife in an upraised hand, saying he was going to kill Mrs. Wolfe and what was that to Johnston. Johnston retreated 10 to 15 feet, then stood his ground and drew his gun, saying to Pittman: "Charles, don't come any closer—I don't want to hurt you." Despite this Pittman kept approaching Johnston with the knife held in a menacing position. When Pittman was about 11 feet distant from him, Johnston fired one shot at his feet. When Pittman was about 6 feet away, Johnston fired two shots into Pittman's body, one of which entered his heart causing instant death. Before these shots were fired, Johnston was standing only a few feet from an open, unobstructed door, which led to the outside of the building.

The rule is well established that, in passing upon the sufficiency of the evidence to sustain a criminal conviction, the evidence must be read in a light most favorable to the Commonwealth, and it is entitled to the benefit of all reasonable inferences arising therefrom: *Commonwealth v. Crews,* 429 Pa. 16, 239 A. 2d 350 (1968). Our reading of the instant record in this light fails to persuade us that the conviction in this case should stand.

The killing of another human being without justification or excuse is felonious homicide: *Commonwealth v. Wucherer,* 351 Pa. 305, 41 A. 2d 574 (1945); 4 Blackstone, Commentaries 188 (1898). However, a killing is not felonious and is excusable if it is com-

mitted in self-defense: *Commonwealth v. Breyessee,* 160 Pa. 451, 28 A. 824 (1894); 17 P.L.E. Homicide §45; 40 C.J.S. Homicide §114. Where a homicide has been committed in legitimate and necessary self-defense, the slayer is entitled to an absolute acquittal: *Commonwealth v. Vassar,* 370 Pa. 551, 88 A. 2d 725 (1952); 40 C.J.S. Homicide §114. At trial, Johnston did not deny killing Pittman, but maintained that he did so in defense of his own life.

The following conditions must be satisfied before one can successfully invoke the defense of self-defense: 17 P.L.E. Homicide §§45, 46; 40 C.J.S. Homicide §114. (1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing: *Commonwealth v. Minoff,* 363 Pa. 287, 69 A. 2d 145 (1949). (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom: *Commonwealth v. Collazo,* 407 Pa. 494, 180 A. 2d 903 (1962); *Commonwealth v. Miller,* 313 Pa. 567, 170 A. 128 (1934); *Commonwealth v. Russogulo,* 263 Pa. 93, 106 A. 180 (1919). (3) The slayer must not have violated any duty to retreat or avoid the danger: *Commonwealth v. Collazo,* supra; *Commonwealth v. Johnson,* 213 Pa. 432, 62 A. 1064 (1906); *Commonwealth v. Breyessee,* supra.

Even though a person has entered the business premises of another, at the invitation of the owner, his subsequent conduct may be such as to justify the revocation of the invitation to remain as a guest. The invitee, if he remains, then becomes a trespasser. In this case, Pittman, an invitee, became a trespasser when he failed to leave when Johnston requested him to. As owner of the business premises, defendant Johnston had the right to order the deceased, Pittman, from the premises, and in case of refusal had the right to remove him by force, if

necessary: Cf. *Yoder v. Yoder*, 239 Pa. 12, 86 A. 523 (1913); *Sloan v. Schomaker*, 136 Pa. 382, 20 A. 525 (1890). Since the difficulty ensued in the exercise of Johnston's legal right of ejection, Johnston is without fault in provoking the controversy within the meaning of the first element of self-defense.

In view of Pittman's actions immediately prior to and at the time of the killing involved, the accused Johnston certainly had reasonable grounds to believe that he was in imminent danger of his life or great bodily harm from his attacker. No one in the case seems to question this fact.

But, it is argued by the Commonwealth (and it is on this point that the lower court mainly relied in sustaining the conviction), that Johnston could have retreated from the building through a nearby door and escaped harm without resorting to shooting Pittman.

In a long line of decisions, we have held that the right to take life in self-defense does not arise while there are means of escape open to the person attacked: *Commonwealth v. Collazo*, supra; *Commonwealth v. Johnson*, supra; *Commonwealth v. Breyessee*, supra. Life is sacred and if it is merely a question of whether one man should flee or another should die, then certainly the taking of life should be avoided and the person under attack should flee.

There is an exception to this rule, however. Where a man is dangerously assaulted or feloniously attacked in his own dwelling house by one not a member of the household, he need not retreat, but may stand his ground and meet deadly force with deadly force to save his own life or protect himself from great bodily harm: *Commonwealth v. Wilkes*, 414 Pa. 246, 199 A. 2d 411 (1964), *cert. denied*, 379 U.S. 939, 85 S. Ct. 344, 13 L. Ed. 2d 349 (1964); *Commonwealth v. Fraser*, 369 Pa. 273, 85 A. 2d 126 (1952). As far as we know, this exception has never been extended in Pennsylvania to in-

clude the place of business of the person attacked. We are persuaded, however, that it should be so extended. "[I]t has been generally held that a person has the same right to defend his office or place of business against intrusion that he has to defend his dwelling; and, where his occupancy of such office or place of business is rightful and lawful, he may defend himself from an unlawful or felonious attack and is no more under the necessity of retreating than he would be in his own home or dwelling.": 40 Am. Jur. 2d, Homicide, §169, at 455. A review of the authorities and leading American cases appears in Annot., 47 A.L.R. 418. See also 40 C.J.S. Homicide, §130(c) and 57 Dick. L. Rev. 254 (1953).

Since, in this case, defendant Johnston was in his own place of business and was in imminent danger of serious personal harm or death from an unjustified attack, he was not required to retreat and will not be denied the right of self-defense for failing to do so, even if he could have safely retreated to the exit and left the building without suffering harm from Pittman.

Nevertheless, it is well established that self-defense is an affirmative defense, and he who asserts it has the burden of proving it before a jury by the preponderance of the evidence: *Commonwealth v. Wilkes,* supra; *Commonwealth v. Noble,* 371 Pa. 138, 88 A. 2d 760 (1952); *Commonwealth v. Burns,* 367 Pa. 260, 80 A. 2d 746 (1951). Cf. *Commonwealth v. Updegrove,* 413 Pa. 599, 198 A. 2d 534 (1964); *Commonwealth v. Iacobino,* 319 Pa. 65, 178 A. 823 (1935). In this case the Commonwealth's own evidence establishes that the killing was excusable. When this occurs, the above rule is inapposite because the Commonwealth has then failed to establish the commission of a *felonious homicide* beyond a reasonable doubt, which it must do before the accused may be convicted of even voluntary

manslaughter:[2] *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632 (1938). *See Commonwealth v. Vassar,* supra. The Commonwealth has the burden of proving all of the essential elements of the crime charged. We conclude that, as a matter of law, it has failed to sustain this burden in this case.

Judgment is reversed and the record remanded with directions to enter an order discharging Johnston.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY, March 20, 1970:

In 1894, this Court stated the terms upon which a killing might be excused as having been an act of self-defense: "Life may be lawfully taken in self-defence; but it must appear that he who takes it was in imminent danger of death or great bodily harm and that no other way of escape from the danger was open to him. It is the duty of one who is assailed to flee, if flight is possible; and it is only when he is persuaded that he must suffer death or grievous bodily harm at the hands of his assailant, or take the life of his assailant that he may save his own, that he can justify his act as done in self-defence." *Commonwealth v. Breyessee,* 160 Pa. 451, 456, 28 Atl. 824 (1894). The understanding of self-defense articulated in *Breyessee* has remained the law of the Commonwealth up to the present. *Commonwealth v. Lawrence,* 428 Pa. 188, 236 A. 2d 768 (1968) and *Commonwealth v. Collazo,* 407 Pa. 494, 180 A. 2d 903 (1962). It reflects the deeply felt belief that life is sacred and should not be taken, even in self-defense, except as a matter of the last resort when there is no reasonable alternative. As the Court held in *Commonwealth v. Vassar,* 370 Pa. 551, 88 A. 2d 725 (1952) and

---

[2] Anything that one might imply to the contrary from this Court's decision in *Cathcart v. Commonwealth,* 37 Pa. 108 (1861), should be disregarded.

reiterated in *Commonwealth v. Collazo, supra,* where it is a question as to " 'whether one man shall flee or another shall live, the law decides that the former shall rather flee than the latter may die.' "

Both in this and in other jurisdictions, however, it has been consistently held that one is under no duty to retreat when feloniously attacked or placed in danger while in one's own home. *Commonwealth v. Wilkes,* 414 Pa. 246, 199 A. 2d 411 (1964), *cert. denied,* 379 U.S. 939 (1964) ; *Commonwealth v. Fraser,* 369 Pa. 273, 85 A. 2d 126 (1952). That exception is based on our common sense that the home is the last place of safety, that one there assaulted is already "at the wall" and no further retreat is required.

In the present case, the Court holds that the rule that he who is being assailed is not obliged to retreat if in his own home is applicable also when the threatened party is lawfully in "his office or place of business," and this notwithstanding that a way of retreat was immediately at hand. I am not persuaded that this extension of the "no retreat rule" is either necessary or wise. No reason of policy or of logic has been advanced in support of this extension, nor is it suggested that the present limitations placed upon the claim of self-defense unduly jeopardize any legitimate public interest. It is true, as the majority notes, that some other jurisdictions have embraced the rule here adopted, but I do not see any indication that this Commonwealth has suffered from the want of such a rule. Absent strong countervailing considerations which are not here present, I would not adopt a rule of law which more easily justifies the taking of human life.

Moreover, I believe that significant definitional problems are inherent in the majority's rule and indicate the unwisdom of the Court's present holding. What is one's home, and where it is, is generally a simple matter of fact, and not a matter of dispute.

One's "office or place of business", on the other hand, is not so susceptible to easy definition; and the collateral determination of the person, or the class of persons, able to claim the "place of business" exception will prove still more elusive. It is easy to imagine the troublesome problems which may arise when the courts of this Commonwealth attempt to apply this no-retreat rule to a street corner newsstand, a small store or a large one, an office building, a factory, a mine or a farm, to suggest a few examples. Precisely because the present rules relating to self-defense are adequate, these problems are unnecessarily created.

Because I can find no real merit to the present holding and believe the rule will leave considerable problems in its wake, I dissent.

Mr. Justice JONES joins in this dissenting opinion.