**Brotzman v. Moser**

*Martin Cohen,* for plaintiff.
*Joseph Leeson,* for defendant.

FRANCIOSA, J., October 11, 1971.—In this trespass action, the jury awarded a verdict in favor of plaintiff in the amount of $11,644.05. Since the trial judge granted a compulsory nonsuit as to wife-defendant, the verdict was returned solely against husband-defendant. Now, Darryl Moser, husband-defendant,[1] has filed a motion for judgment n.o.v. and, in the alternative, for a new trial.

In considering a motion for judgment n.o.v., the evidence, together with all reasonable inference therefrom, must be evaluated in the light most favorable to the verdict winner: Connolly v. Philadelphia Transportation Co., 420 Pa. 280, 216 A. 2d 60.

Treated in this light, the facts may be reconstructed as follows. On the evening of May 4, 1969, Brotzman, accompanied by his brother-in-law and three other young men, was searching for his wife. She had been missing for approximately a day. At about 10:45 p.m., their search took them to defendant's house. There, they had a conversation with defendant's wife, Gladys Moser, who told them plaintiff's wife was not at the Moser home. According to Mrs. Moser, plaintiff and his companions were "very polite," and they drove away without saying or doing anything to alarm her.

As Brotzman was driving away, he encountered defendant's approaching car. The two cars stopped and Brotzman asked defendant if his wife "Ada" was "down his house." Although Brotzman and defendant did not know each other, defendant knew who "Ada" was. In fact, at that very moment, defendant was returning from a motel where he had been visiting with "Ada" and his nephew, "Tony." For reasons which do not appear in the record, defendant chose to conceal his knowledge of "Ada's" whereabouts and he re-

---

[1] Hereinafter, he will be referred to as defendant.

sponded by saying "I don't know, I wasn't back there, come down and see."

Thereupon, defendant "pulled out" and drove to his house. Brotzman turned his car around and followed after him. When Brotzman arrived at the house, he alone got out of his car. He went to the front entrance, opened the screen door and knocked on the "wooden" front door. After a minute "went by," defendant opened the front door and pointed a 35 caliber rifle at Brotzman's chest. The rifle was loaded with a clip containing five bullets; moreover, defendant had taken off the safety and he had placed his hand on the trigger.

At this point, defendant held the rifle "six to twelve inches away" from Brotzman's chest. Then, defendant threatended to shoot Brotzman if he did not get off the porch. The pointing of the rifle and the threat caused Brotzman to step back. While stepping back, Brotzman stated: "You don't want to shoot anybody, I came to see if 'Ada' and 'Tony' were there [sic], if they are not I'll go."

Defendant continued to hold the rifle within six to twelve inches of Brotzman's chest. When defendant made a second threat to shoot, Brotzman's testimony is that he (Brotzman) "didn't know what to do," so he "just pushed the gun down away from" his chest. As Brotzman did so, the rifle discharged and he sustained a "gapping wound" of his left leg. The required operative procedures involved the removal "of much of the leg muscle." In addition, the residual damage to the sciatic nerve is a permanent condition which Brotzman will have to endure for the remainder of his life.

We need not discuss plaintiff's theories of negligence.[2] This is so because defendant does not chal-

---

[2] Plaintiff's case on negligence charged defendant with a breach of his duty to exercise extraordinary care in his possession and use of a loaded firearm. In Kuhns v. Brugger, 390 Pa. 331, 135

lenge the sufficiency of the evidence from which the jury could find that he was negligent. Instead, defendant asks that judgment n.o.v. be entered in his favor on two bases. He argues that Brotzman was guilty of contributory negligence and assumption of risk as a matter of law.

Generally, assumption of risk and contributory negligence are considered as separate and distinct defenses; "but when attempts have been made to formulate distinctions between the two concepts great confusion has resulted": Joyce v. Quinn, 204 Pa. Superior Ct. 580, 205 A. 2d 611. Assumption of risk in its primary and strict sense involves voluntary exposure to obvious and known danger which negates liability and bars recovery because plaintiff is assumed to have relieved defendant of any duty to protect him: Pritchard v. Liggett & Myers Tobacco Co., 350 F. 2d 479, cert. den. 382 U. S. 987, 86 S. Ct. 549, 15 L. Ed. 2d 475.

By its nature, the question of assumption of risk is ordinarily one for the jury. However, defendant appears to feel that as a matter of law plaintiff tested an obvious danger when he pushed the loaded rifle away from his chest.

The basis of assumption of risk is the consent to assume it: Schentzel v. Philadelphia National League Club, 173 Pa. Superior Ct. 179, 96 A. 2d 181. The fallacy of defendant's argument is that no opportunity for consent is shown by the evidence in this case. Here, the testimony discloses that plaintiff was forced, to

---

A. 2d 395, the Supreme Court held that a person handling a loaded firearm in the immediate vicinity of others is liable for its discharge, even though the discharge is accidental and unintentional, provided it is not unavoidable.

Also, defendant had pleaded guilty to playfully or wantonly pointing a gun in violation of our criminal code, (Act of June 24, 1939, P. L. 872, 716, 18 PS §4716) which may be regarded as negligence per se. See Kuhns v. Brugger, supra.

react to the peril of a loaded firearm being held inches from his chest before he was given a choice to avoid such a situation of danger. Under these circumstances, whether or not plaintiff could have gotten to a position of safety without pushing the rifle away from a vital part of his body was purely a factual question to be decided by the jury. We will not disturb their finding in that regard.

Similarly, the matter of plaintiff's contributory negligence was properly submitted to the jury. In our opinion, the trial judge was correct in charging the jury that the so-called "sudden emergency" doctrine was applicable to this issue. When circumstances conspire to throw one into a state of peril through no fault of his own, he cannot be held accountable for an error in judgment if the emergency allows no time for seasoned reflection: Johnson v. Pennsylvania Railroad Co., 399 Pa. 436, 160 A. 2d 694.

Again, on the same subject, the Supreme Court said in Marfilues v. Philadelphia and Reading Railway Company, 227 Pa. 281, 75 Atl. 1072:

"The problem was what to do and how to do it and, if in the emergency suddenly arising he failed to do what after mature deliberation would seem to be the wisest thing, he is not to be charged with negligence. He was entitled to a reasonable opportunity to think and act."

The loaded rifle, at the moment of crisis, was so close to plaintiff's chest that the jury was warranted in finding that plaintiff had no time for "seasoned reflection." The most that can be said in such a desperate situation is that a jury should determine whether the endangered person's reactions were so contrary to those of a reasonably prudent person that he must be held responsible himself for the harm which befell him. Thus, there is no reason why we

should declare plaintiff was guilty of contributory negligence as a matter of absolute fiat.

Defendant's alternative motion for a new trial is based entirely on alleged errors in the trial judge's charge to the jury.

With regard to the charge, defendant contends, first, that the trial judge erred in affirming plaintiff's points for charge nos. 11 and 12. Reading of the requested points resulted in the submission of the "sudden emergency" doctrine to the jury. As already has been explained, we are convinced that the "sudden emergency" situation was raised by the facts of this case. Therefore, we have no difficulty in holding that a reading of the requested points on this subject was necessary to a fair presentation of the issues which were to be determined by the jury.

Next, defendant suggests that a new trial should be granted because the trial judge refused to read all of his requested instructions on self-defense. This complaint is patently without merit.

While self-defense is applicable to civil suits as well as to criminal actions,[3] the burden of proving it is upon defendant. Here, we are hard put to find affirmative testimony showing that defendant had a basis for a reasonable belief that he was in imminent peril of his life or likely to suffer serious bodily harm. Although our reading of the trial transcript causes us to question whether defendant succeeded in bringing self-defense into the case, we need not pursue this line of inquiry. The record shows that defendant's theory of self-defense was submitted to the jury; moreover, a reading of the charge reveals that the subject was substantially and sufficiently covered in the general charge and by

---

[3] See Kitay v. Halpern, 104 Pa. Superior Ct. 167, 158 Atl. 309; Smith v. Lauritzen, 356 F. 2d 171 (3rd Cir.).

those portions of defendant's requested instructions which were approved and read to the jury. Consequently, the trial judge's refusal to read additional instructions relating to the same subject matter is not ground for granting a new trial.

This brings us to defendant's third exception to the charge. He contends the trial court erred in its refusal to charge the jury that plaintiff became a trespasser. As support for this contention, defendant relies upon the decisions in Horney v. Nixon, 213 Pa. 20, 61 Atl. 1088; Yoder v. Yoder, 239 Pa. 12, 86 Atl. 523; and Sloan v. Schomaker et al., 136 Pa. 382, 20 Atl. 525.

In these cases, the Supreme Court recognized the right of a property owner to order persons from his premises, and in the event of their refusal to go to use sufficient force to remove them. However, in all three cases the removal was accomplished without the necessity of force.

It is immediately apparent that the events before us happened in a manner exactly opposite to the sequence of conduct commended by the Supreme Court in the foregoing cases. As we have previously emphasized, in the matter at hand defendant's first action was the pointing of a loaded rifle at plaintiff's chest. Since a loaded firearm is a highly dangerous instrumentality, defendant's actions are to be measured from the time he picked up the rifle and pointed it with the barrel less than 12 inches from plaintiff's chest. In applying that yardstick, we believe defendant was bound to exercise extraordinary care during that interval of time. The evidence indicates he failed to do so and, therefore, defendant's breach of the duty he owed to plaintiff took place before he ordered plaintiff from the premises. Because we are convinced the affixation of liability occurred at that point in the instant situation, we approve the trial judge's refusal to instruct the

jury that plaintiff was to be considered a trespasser at the time of his injury.

For the foregoing reasons, defendant's motions for judgment n.o.v. and, in the alternative, for a new trial are denied. Accordingly, we enter the following

### ORDER OF THE COURT EN BANC

And now, October 11, 1971, defendant's motions for judgment n.o.v. and, in the alternative, for a new trial are denied and dismissed.