## Commonwealth v. Fraser, Appellant.

Argued November 14, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Thomas M. Reed,* for appellant.

*Raymond V. John,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 7, 1952:

Defendant, Willie Alma Fraser, was charged with the murder of her estranged husband, Charles Fraser, in her home, 1331 South Opal Street, Philadelphia, Pennsylvania, on April 2, 1950. She pleaded "not guilty" and asserted self-defense. The jury returned a verdict of "guilty of voluntary manslaughter". Following dismissal of defendant's motion for a new trial, sentence was imposed from which this appeal is taken.

At the outset of the trial the District Attorney stated in his opinion the evidence to be presented did not warrant a finding of murder in the first degree. It appeared that defendant and her husband were estranged and had been separated for about eight months before the killing took place. During the period they had lived together they had engaged in a series of violent quarrels and defendant had several times been beaten by her husband. Defendant had established her residence in an apartment house and had living with her a youngster of about seven years of age for whom she was caring. The husband went to his wife's apartment on some occasions, but only as a trouble maker, compelling the defendant to call the police. On the

night before the killing he had broken into the apartment and taken away clothing belonging to the defendant and the child. On the evening of the occurrence, defendant, after an absence from her apartment, was about to enter it when she noticed that the door was partially open. She was suspicious and went to the apartment of her friend, Lucille Moore, who lived on the same floor. Together they went to defendant's apartment to investigate. As defendant pushed the door open, her husband, Charles Fraser, came from behind the door and pulled her into the room, brandishing a butcher knife. There followed a violent tussle during which defendant was beaten. Roosevelt Corbin, defendant's brother, arrived at this time and in attempting to separate them, was himself struck to the floor and held there by Fraser, who had the knife still in his hand. Defendant managed to wrest the knife from her husband's hand and stabbed him in the left buttock, which blow severed the femoral vein. Thereupon Fraser got up and in a menacing manner advanced toward defendant who slowly retreated, warning him to stay away, and wielding the knife in front of her. In so doing, three more stab wounds were inflicted upon deceased, one severing a large blood vessel leading from the heart. Either of the major wounds could have caused death, but the wound in the hip caused a slow hemorrhage from which death would not immediately occur. After receiving the last wounds, decedent sat on a sofa and defendant threw the knife away in the room and ran out, followed by her brother. The defendant testified that when she first entered the room the deceased said to her, "I am going to kill you tonight."

The learned trial judge charged the jury, ". . . it must appear that the defendant had no other reasonable means of escape except by killing.", ". . . if she failed to use opportunities of escape available to her, then of course, whatever she did would not be excus-

able on the grounds of self defense.", and the whole tenor of his charge was in accord with these instructions. Appellant complains that the deceased husband was an intruder in the defendant's home and she was not obliged to retreat or endeavor to escape and her actions were justified if she believed or had reasonable grounds to believe that her own life would be taken or great bodily harm done to her.

The rule governing self-defense in this regard is well stated in 26 Am. Jur., §155, page 263, as follows: "Regardless of any general theory to retreat as far as practicable before one can justify turning upon his assailant and taking life in self-defense, the law imposes no duty to retreat upon one who, free from fault in bringing on a difficulty, is attacked at or in his own dwelling or home. Upon the theory that a man's house is his castle, and that he has a right to protect it and those within it from intrusion or attack, the rule is practically universal that when a person is attacked in his own dwelling he may stand at bay and turn on and kill his assailant if this is apparently necessary to save his own life or to protect himself from great bodily harm. This is the rule both at common law and by statute in many states . . . A man in his own house was treated as 'at the wall,' and could not, by another's assault, be put under any duty to flee therefrom. The fact that retreat can be safely effected does not render it necessary for a man assaulted in his dwelling to retreat therefrom. The view has even been taken that the right to kill without retreating exists as to one's home or place of residence even though an immoral business is carried on there."

The same rule is enunciated in 40 C. J. S., §130 (c), page 1015: "A person need not retreat or seek to escape, even though he can do so without increasing his danger, but may lawfully resist even to the extent of taking life if necessary, where, being without fault

in bringing on the difficulty, he is assaulted while in his own dwelling house. . .".

We believe that the rule stated in the above treatises has always been recognized as the law in this State, and the fact that it has not been seriously questioned accounts for the apparent dearth of any express statement or ruling on the subject by our appellate courts. In other jurisdictions the rule has been carefully considered and adopted. Where a man is dangerously assaulted or menaced in his own house he is already at the wall and need not retreat: *State v. Miller,* 221 N. C. 356, 20 S. E. 2d 274. The rule is said to be universal that where the person is in his own house he is not bound to retreat when feloniously attacked: *People v. Lewis,* 117 Cal. 186, 48 P. 1088; *State v. Bennett,* 128 Iowa 713, 105 N. W. 324; *State v. Sipes,* 202 Iowa 173, 209 N. W. 458; *Fortune v. Commonwealth,* 133 Va. 669, 112 S. E. 861. A review of the authorities and leading American cases appears in *Beard v. United States,* 158 U. S. 550, 15 S. Ct. 962.

The opinion of the lower court in dismissing defendant's petition for a new trial states that the right to kill in self-defense should depend upon the circumstances of the attack and not upon the place where the attack occurs. Applying that rule to the facts, the court concludes that it was clear that there was no necessity or justification for the taking of human life, adding, "The essential element, which must be present for such right to exist, is that the attack be by an intruder. In the instant case, although the deceased may not have been welcome at defendant's apartment, he could not be classified as an intruder. He was defendant's lawful husband, and as such he was entitled to return to his wife's apartment." The court relied upon *Commonwealth v. Johnson,* 213 Pa. 432, 62 A. 1064, but in that case both the decedent and the defendant lived in the same dwelling and both were members of

the owner's family. Each had an equal right to be there and when the struggle took place the ordinary rules as to self-defense were applicable.

In the instant case, however, the mere fact that deceased and defendant were husband and wife does not compel the application of the ordinary rules of self-defense on the theory that each had an equal right to be on the premises. Here the defendant and deceased had been separated and defendant had maintained her separate residence. Because of the estrangement and separation of the husband and wife, it does not appear that both had an equal right to be there. Clearly, the husband, under the circumstances, could be regarded as an intruder in his wife's home, and the jury should have been instructed that if they found the husband was an intruder and that the defendant had reason to believe and did believe that what she did was necessary for the safety of her own life or to protect her from great bodily harm, she was not obliged to retreat or attempt to escape; and that the killing under such circumstances constituted justifiable homicide, entitling her to acquittal. The failure to so charge was reversible error.

The judgment is reversed and a *venire facias de novo* is awarded.