COMMONWEALTH of Pennsylvania,
Appellant

v.

Seth Matthew HORNBERGER,
Appellee.

Superior Court of Pennsylvania.

Argued Dec. 4, 2012.

Filed Aug. 9, 2013.

Michael F. Piecuch, Jr., Assistant District Attorney, Middleburg, for Commonwealth, appellant.

Edward J. Rymsza, Williamsport, for appellee.

BEFORE: BOWES, OLSON and WECHT, JJ.

OPINION BY OLSON, J.:

Appellant, the Commonwealth of Pennsylvania (Commonwealth), appeals from an order entered on June 1, 2012 in which the trial court vacated the convictions of Appellee, Seth Matthew Hornberger (Hornberger), on charges of third degree murder,[1] voluntary manslaughter (two counts),[2] and possession of an instrument of crime [3] and awarded Hornberger a new trial. On appeal, the Commonwealth asserts that the trial court erred in reassessing its instructions to the jury because the court's original charge accurately stated the law with respect to Hornberger's justification defense and the duty to retreat under the circumstances of this case. We disagree and, therefore, affirm.

The trial court summarized the evidence introduced at trial as follows:

[Hornberger] and Michael Lepley were in the City of Sunbury [Northumberland County, Pennsylvania] in the early morning hours of March 13, 2011. They were able to obtain a ride into Snyder County near the residence of [Thomas] Bingaman. Lepley had previously stayed overnight at [Bingaman's Snyder County apartment]. Although Lepley lived with his grandparents, he testified that he was not permitted to go to his grandparents' residence [during the early morning hours of March 13th] be-

---

1. 18 Pa.C.S.A. § 2502(c).

2. 18 Pa.C.S.A. §§ 2503(a) (sudden provocation) and 2503(b) (imperfect self-defense/defense of others).

3. 18 Pa.C.S.A. § 907(a).

cause he was accompanied by [Hornberger]. Lepley testified that he had no place to go.

Lepley further testified that he attempted to obtain permission to stay at the apartment from Bingaman. His attempt was through text messages. According to Bingaman, he [ (Bingaman) ] did not give Lepley permission to be [at] the premises at that time.

Lepley and Hornberger went to [Bingaman's] residence in the early morning hours of March 13, 2011 and entered the residence. While in the residence, Lepley and [Hornberger] were utilizing Bingaman's computer. Bingaman [and a friend] returned [to Bingaman's] home at some time in the early morning hours and discovered [Hornberger] and Lepley in [the] residence. Although Bingaman testified that he was upset that these individuals were in his apartment, he told them they could stay as long as they did not make any noise. Bingaman and his guest then went to sleep. The guest went into the single bedroom and Bingaman went to sleep on the couch in the living room.

Bingaman testified that he had also given permission to Alan Martin (victim) to come to his apartment to stay in the early morning hours of March 13, 2011. Bingaman testified that he conveyed this to [Hornberger] and Lepley and then he went to sleep. At some point between the time that Bingaman went to sleep and 6:30 a.m., the victim entered the residence. An altercation broke out between the victim and [Hornberger's] friend, Lepley. The testimony indicated that the victim had Lepley in a choke hold and while the victim and Lepley were engaged in the altercation, [Hornberger] grabbed a steak knife and

plunged it into the side of the head of the victim, ultimately killing him.

Trial Court Opinion, 6/13/12, at 1–2.

After the witnesses presented their testimony, the trial court prepared to instruct the jury regarding the law they should apply to the evidence. Hornberger claimed that the killing was justified based upon his need to defend Lepley from Martin's attack and, accordingly, he requested instructions pertaining to the defense of justification. The trial court agreed that Hornberger presented evidence that raised a justification defense and proceeded to instruct the jury regarding the law of justification, as to both self-defense and defense of others, in Pennsylvania. *See* N.T. Trial, 3/30/12, at 229–234.

The court informed the jury that the Commonwealth carried the burden to prove, beyond a reasonable doubt, that Hornberger did not act in justifiable defense of Lepley. *Id.* at 232. With respect to the duty to retreat, the trial court explained that in order to defeat Hornberger's claim of justification, the Commonwealth needed to prove that "[Hornberger] knew that he could avoid the necessity of using deadly force with complete safety by retreating himself or trying to cause [Lepley] to retreat and failed to do so." *Id.* at 234. The court offered the following guidance concerning when, and under what circumstances, the duty to retreat applied to Hornberger and Lepley:

Similar to [the court's instructions concerning self-defense], if you find that [Hornberger] and [Lepley] had the right to be in Thomas Bingaman's apartment that evening and you also find that Alan Martin did not have the right to be in the Bingaman residence, then [Hornberger] and [Lepley] had no obligation to retreat from the apartment. If, however, you find that [Hornberger] and [Lepley] and also Alan Martin had the

privilege to be present in the Bingaman residence, then [Hornberger] and [Lepley] had a duty to retreat to avoid the necessity of deadly force.

*Id.* After the trial court concluded its instructions to the jury, counsel for Hornberger moved for a mistrial, objecting that no duty to retreat applied where the defendant took action in defense of another in the defendant's temporary dwelling. *Id.* at 241.

On March 30, 2012, following its deliberations, the jury convicted Hornberger on all counts. On April 12, 2012, Hornberger moved for an arrest of judgment or, alternatively, a new trial. In his motion, Hornberger argued that the trial court's instructions were erroneous and prejudicial in that the court charged the jury that Hornberger had a duty to retreat from Bingaman's apartment if he did not have a right to be present that was superior to that of the victim, Martin. Motion in Arrest of Judgment and/or Motion for a New Trial, 4/12/12, at ¶ 4–5. The motion also alleged that Bingaman's residence constituted Hornberger's lawful temporary dwelling and that Hornberger owed no duty to retreat even if defending an attack by a person with an equal right to be present at the premises. *Id.* at ¶¶ 6–7, and 9. The trial court scheduled oral argument on Hornberger's motion and directed the parties to submit briefs in advance of that proceeding. Following argument, the trial court agreed with Hornberger's position, vacated his convictions, and ordered a new trial.[4] Order, 6/1/12; *see also* Trial Court Opinion, 6/13/12, at 4–6 (concluding that: 1) there is no duty to retreat where two individuals have an equal right to be present in a residence; 2) there was evi-

dence that raised a jury question as to whether Bingaman's apartment was Hornberger's and Lepley's dwelling; and, 3) the jury should have been instructed that if it found that Bingaman's residence was Hornberger's and Lepley's dwelling at the time of the killing, then neither Hornberger nor Lepley had a duty to retreat unless they were the initial aggressors). The Commonwealth filed a timely notice of appeal on June 15, 2012 and, pursuant to court order under Pa.R.A.P. 1925(b), a timely concise statement of errors complained of on appeal. On July 18, 2012, the trial court entered an order referring this Court to its prior June 13, 2012 opinion as its statement of the reasons supporting its decision to vacate Hornberger's convictions and grant him a new trial.

In its brief, the Commonwealth raises the following issue for our review:

> Whether the trial court erroneously granted a new trial based on allegedly faulty jury instructions, even though it had properly modified the suggested standard jury instructions on the duty to retreat in a case where the killing did not occur in the [d]efendant's dwelling?

Commonwealth's Brief at 4.

The Commonwealth challenges an order that granted Hornberger's motion for a new trial based upon the court's own reassessment that its duty-to-retreat instruction was both erroneous and prejudicial. We review with deference decisions regarding instructions submitted to a jury; we may reverse the trial court only where we find that it abused its discretion or committed an error of law. *See Commonwealth v. Janda,* 14 A.3d 147, 163 (Pa.Super.2011).

---

**4.** On the same day, the trial court issued an opinion explaining the basis for its ruling. According to the trial court's docket sheet and the date-stamp appearing on the document,

however, the court did not file its opinion until June 13, 2012. We have used the filing date when citing to the court's opinion.

[W]hen reviewing jury instructions for error, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

*Commonwealth v. Sepulveda,* —— Pa. ——, 55 A.3d 1108, 1141 (2012) (quotation marks and case citation omitted). "A faulty jury charge will require the grant of a new trial only where the charge permitted a finding of guilt without requiring the Commonwealth to establish the critical elements of the crimes charged beyond a reasonable doubt." *Commonwealth v. Hansley,* 24 A.3d 410, 420 (Pa.Super.2011) (quotation omitted), *appeal denied,* 613 Pa. 642, 32 A.3d 1275 (2011).

■ To secure a conviction for criminal homicide, it is the Commonwealth's burden to disprove justification beyond a reasonable doubt where the defendant validly asserts self-defense or defense of others. *Commonwealth v. Derby,* 451 Pa.Super. 100, 678 A.2d 784, 787 (1996). Accordingly, we review the relevant statutory provisions [5] that set forth the elements for a justification defense, both in terms of defense of others and self-defense.

With respect to defense of others, the Crimes Code stated at the relevant time:

### § 506. Use of force for the protection of other persons

**(a) General rule.**—The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

**(b) Exception.**—Notwithstanding subsection (a) of this section:

(1) When the actor would be obliged under section 505 of this title to retreat, to surrender the possession of a thing or to comply with a demand before using force in self-protection, he is not obliged to do so before using force for the protection of another person, unless he knows that he can thereby secure the complete safety of such other person.

(2) When the person whom the actor seeks to protect would be obliged under section 505 of this title to retreat, to surrender the possession of a thing or to comply with a demand if he knew that he could obtain complete safety by so doing, the actor is obliged to try to cause him to do so before using force in his protection if the actor knows that he can obtain complete safety in that way.

(3) Neither the actor nor the person whom he seeks to protect is obliged to retreat when in the dwelling or place of work of the other to any greater extent than in his own.

18 Pa.C.S.A. § 506.

Because § 506 incorporates concepts from § 505, which addresses the use of

---

**5.** The General Assembly amended 18 Pa. C.S.A. §§ 505 and 506 effective August 29, 2011. Because the alleged offenses in the present case occurred on March 13, 2011 before the amendments took effect, the trial court used the pre-amendment statutory provisions in formulating its instructions.

force in self-protection, we set forth the relevant provisions of § 505 as follows:

## § 505. Use of force in self-protection

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**—

\* \* \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:

(A) **the actor is not obliged to retreat from his dwelling** or place of work, **unless he was the initial aggressor** or is assailed in his place of work by another person whose place of work the actor knows it to be; and

(B) a public officer justified in using force in the performance of his duties or a person justified in using force in his assistance or a person justified in using force in making an arrest or preventing an escape is not obliged to desist from efforts to perform such duty, effect such arrest or prevent such escape because of resistance or threatened resistance by or on behalf of the person against whom such action is directed.

(3) Except as required by paragraphs (1) and (2) of this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.

18 Pa.C.S.A. § 505(a) and (b)(2)-(3) (emphasis added).

■■■ In *Hansley*, this Court offered guidance governing the submission of a justification defense to the jury:

Before the issue of self-defense [or defense of others] may be submitted to a jury for consideration, a valid claim of self-defense [or defense of others] **must be made out as a matter of law, and this determination must be made by the trial judge.** Such claim may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

Thus, as provided by statute and as interpreted through our case law, to establish the defense of self-defense [or defense of others] it must be shown that[:] a) the slayer [or the other he seeks to protect] was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he [or the other he seeks to

protect] was in imminent danger of death or great bodily harm, **and that there was a necessity to use such force in order to save himself [or the other] therefrom;** and c) the slayer [or the other he seeks to protect] did not violate any duty to retreat or to avoid the danger.

If there is any evidence from whatever source that will support **these three elements** then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.

*Commonwealth v. Hansley*, 24 A.3d 410, 420–421 (Pa.Super.2011) (quotation omitted; emphasis in original; modified for application to defense of others).

The trial court issued instructions regarding the duty to retreat (*see supra* at 281–82) based upon its determination that Hornberger and Lepley had a duty to retreat either because Bingaman's apartment was not their dwelling or because Hornberger, Lepley, and Martin all had an equal right to be present. Trial Court Opinion, 6/13/12, at 4. In making its ruling, the trial court relied upon our opinion in *Commonwealth v. Gray*, 270 Pa.Super. 20, 410 A.2d 876 (1979).

In *Gray*, a jury convicted the defendant of third degree murder and possession of an instrument of crime after he fatally stabbed a fellow patron in a liquor store. On appeal, the defendant challenged the trial court's refusal of his requested points for charge concerning the issue of self-defense. None of the defendant's requested instructions involved the duty to retreat. In rejecting the defendant's challenge to the trial court's instruction, we reviewed the entirety of the trial court's instructions on self-defense. With respect to the duty to retreat, the instructions stated: "In the present case, the defendant had no superior right over that of the deceased to be where he was: therefore, he had a duty to retreat." *Gray*, 410 A.2d at 879. We then held that the court's instructions constituted a "complete and accurate description of the law." *Id.*

After reviewing Hornberger's motion for a new trial, the trial court in the present case reassessed its position with respect to Hornberger's duty to retreat. The court determined that its instructions were erroneous and prejudicial since they "could have allowed the [j]ury to find [Hornberger] guilty without the Commonwealth having established that [Hornberger] did not act in justifiable self-defense." Trial Court Opinion, 6/13/12, at 6. The court reasoned that, based upon case law cited in Hornberger's motion, in particular *Derby, supra,* the jury should have been instructed that if it were to find that Bingaman's apartment was Hornberger's and Lepley's dwelling at the time of the incident, then neither Hornberger nor Lepley had a duty to retreat unless they were the initial aggressors. *Id.* The trial court distinguished *Gray*, finding that that case dealt with the defendant's right to be present in a public store and that the General Assembly treated dwellings differently from other locations. *Id.* at 5.

■ After careful review of the certified record and relevant case law, we conclude that the trial court's reassessment of its instructions constituted a sound exercise of its discretion and was consistent with Pennsylvania law. In *Derby*, we considered whether a wife, who feared death or serious bodily injury at the hands of her husband, had a duty to retreat (if a safe retreat option was available) where the husband had an equal right to occupy the couple's home. After reviewing § 505, we held: "[N]o longer is a person obliged to retreat from his or her dwelling when assailed by a person who has an equal right to be there." *Derby*, 678 A.2d at 787;

*see also Commonwealth v. Eberle,* 474 Pa. 548, 379 A.2d 90, 93 (1977) (no duty to retreat from dwelling even when confronted by an attacker with equal right to be present therein).

In granting Hornberger's new trial motion, the trial court correctly found that Hornberger raised a valid question for the jury as to whether Bingaman's apartment qualified as a temporary lodging, and hence a dwelling, for both Hornberger and Lepley. The trial examined the facts as follows:

> Bingaman, the tenant of the apartment, testified that although [Hornberger] and Lepley did not initially have his permission to be at the apartment in his absence, after Bingaman arrived home, and before the assault resulting in the victim's death, Bingaman gave [Hornberger] and Lepley permission to remain in the premises for an indefinite period of time. Lepley testified that he and [Hornberger] had no other place to go that evening and needed to go to the Bingaman residence so that they had a place to stay. It is irrelevant that [Hornberger] or Lepley intended to sleep or stay at the Bingaman residence for the residence to be their dwelling at the time of the incident. It is clear based on the uncontradicted testimony that this was a place that [Hornberger] and Lepley went to stay for an undetermined period of time.

Trial Court Opinion, 6/13/12, at 5. The record supports these findings. We add only that both Hornberger and Lepley testified that the hour was late, the weather was cold, and neither of the men possessed a vehicle. Taken together, these facts constituted a viable jury question as to whether Bingaman's apartment may be deemed a dwelling for Hornberger and Lepley. *See* 18 Pa.C.S.A. § 501 (defining "dwelling" as "[a]ny building or structure though movable or temporary, or a portion thereof, which is for the time being the home or place of lodging of the actor"); *see also* Black's Law Dictionary, Fourth Edition (defining "lodging place" as "[a] place of rest for a night or a residence for a time; a temporary habitation").

Because a defendant does not have a duty to retreat from his dwelling except with limited exceptions, we also agree that the jury should be instructed that if they find that Bingaman's apartment constitutes a dwelling place for Hornberger and Lepley, then no duty to retreat applies unless Hornberger or Lepley, or both, were the initial aggressors. It is incumbent upon the trial court in this context to guide the jury's inquiry by giving the statutory definition for the term "dwelling" which is set forth in § 501, an effort which was not made in the court's original instructions. Moreover, while we recognize the trial court's broad discretion in phrasing instructions submitted to the jury, we caution the court to exercise greater care in tracking the terms found in the statutes that address the defense of justification. The statutes do not speak in terms of "a right to be present" or similar formulations. Instead, the statutes attach specific legal consequences to whether a killing occurred in the actor's "dwelling" or "work place."

We do not agree with the Commonwealth's contentions that the original instructions were correct since neither Hornberger nor Lepley resided with Bingaman and Bingaman's permission did not establish his apartment as their dwelling or lodging place. The trial court's ruling, and our endorsement of its conclusion, rest upon the determination that the record presented a jury question as to whether Bingaman's apartment constituted Hornberger's and Lepley's dwelling. The Commonwealth urges us to usurp the fact find-

er's role and conclude, as a matter of law, that "the killing did not occur in [Hornberger's] dwelling." *See* Commonwealth's Brief at 11. We reject this invitation for the reasons set forth above. We believe the better practice is to permit the Commonwealth to develop a record in support of its contentions, through examination of witnesses and the introduction of evidence, and, ultimately, advocate its contentions to the jury. We also conclude that *Derby* and *Eberle*, not *Gray*, supply the appropriate rule of decision in this case. Accordingly, we hold that the Commonwealth is not entitled to relief.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.