J-S82006-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JESSE JONES, | |
| Appellant | No. 1678 WDA 2016 |

Appeal from the Judgment of Sentence Entered September 16, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000959-2016

BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MARCH 12, 2018

Appellant, Jesse Jones, appeals from the September 16, 2016 judgment of sentence of an aggregate term of 10 to 20 years' imprisonment, followed by 1 year of probation, imposed after he was convicted, following a non-jury trial, of voluntary manslaughter, persons not to possess a firearm, and tampering with physical evidence.  After careful review, we affirm.

The trial court summarized the facts of Appellant's case, as follows:

 On September 23, 2015, Cameron Johnson (hereinafter "Victim") was driving a dark-colored Buick Lucerne down Juniper Drive in the Mooncrest Housing Plan in Moon Township, Pennsylvania. (T. p. 139).  At that same time, [Appellant] was walking down Juniper Drive wearing a black hooded sweatshirt and a black baseball hat.  (T. p. 88).  Victim pulled his vehicle over in front of [Appellant], put the vehicle in park, and began to

_____

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

exit the vehicle. (T. p. 141, Video). As Victim began to exit his vehicle, [Appellant] extended his arm and discharged the firearm he was carrying at Victim five times. (T. p. 141, Video). Only a few seconds had passed between Victim['s] opening the car door and [Appellant's] discharging the firearm. (T. p. 141, Video). [Appellant] shot Victim in the upper back as he was exiting the vehicle, and continued to shoot at Victim while he attempted to get away, as is evidenced by the shattered back windshield of Victim's vehicle. (T. p. 74). Victim's attempt to get away was not successful, as he had been fatally shot and crashed his vehicle into a tree. (T. p. 71). Victim was pronounced dead at the scene and transported to the Allegheny County Medical Examiner's Office for an autopsy. (T. p. 193-94). According to the stipulation reached by the parties, Victim died from a penetrating gunshot wound to the trunk. (T. p. 195). The fatal gunshot wound entered through the left upper back of Victim, penetrated the lower left lung, descending aorta, lower lobe of right lung, right diaphragm, and the right lobe of the liver. (T. pp. 194-95). This wound caused Victim to bleed to death internally. (T. p. 195).

Jerome Smith, a resident of 197 Juniper Drive, saw [Appellant] running up Juniper Drive with a small silver handgun in his hand, immediately after he heard the shots fired. (T. p. 89). [Appellant] was wearing a black hooded sweatshirt and a black baseball cap. (T. p. 89). [Appellant] then immediately ran between the houses on Juniper Drive, through the woods and onto Oak Drive where he resided. (T. pp. 48; 141, Video). Another resident of Oak Drive, Daniel Forbus, testified that he was outside in his front yard when he heard what sounded to be a small caliber gun discharge multiple times. (T. p. 38). He then witnessed [Appellant] run out of the woods and stop near the stone wall behind the property. (T. p. 43). When [Appellant] came out of the woods, he was not wearing a hat. (T. p. 52). [Appellant] briefly spoke to Mr. Forbus, stating, "he was messing with me," then went into his house. (T. p. 42). Five minutes later, [Appellant] got into the back seat of Sarah Linger's vehicle, laid down, and left. (T. p. 48).

Police arrived on the scene within seconds of the shooting, as they were already there serving an arrest warrant on another resident of Juniper Drive. (T. pp. 57-63; 68-79). Moon Township Officer Justin Blair testified that he was approaching the front of 203 Juniper Drive when he heard a radio call that a car crashed into a tree at the end of Juniper Drive near the bend

to Oak Drive. (T. p. 71). When he approached the vehicle, he found Victim unresponsive in the driver seat. (T. p. 72). He pulled Victim out of the car, and ran to get the AED machine and mask. (T. p. 73). When he returned, Officer Kavanshansky was performing life-saving measures, but was unsuccessful. (T. p. 73). The vehicle had a shattered back windshield. (T. p. 74). There [were] no weapons found on Victim or in the vehicle. (T. p. 79).

Jason Clark of the Allegheny County Medical Examiner's Office, Mobile Crime Unit testified that a Jimenez firearm was recovered from the stone wall behind 267 Oak Drive, and a black Cav baseball hat and black hooded Russell sweatshirt were recovered in a trash can behind 265 Oak Drive. (T. pp. 14-15). The Jimenez firearm was tested by Raymond Everett of the Allegheny County Medical Examiner's Office, Firearms Division. (T. p. 184, 188). The Jimenez firearm was found to be in good operating condition. (T. p. 188). He test fired the gun and compared them to the five (5) spent .25 caliber cartridge cases that had been recovered at the location where [Appellant] discharged the firearm. (T. p. 190). All were matches to the Jimenez firearm recovered from the brick wall. (T. p. 190). He also compared the test-fired bullets with the bullet recovered from Victim, but could not say to a reasonable degree of scientific certainty that the bullets matched. (T. p. 191-92). He testified that the bullets had the same class and characteristics (i.e.[,] [] 6 lands and grooves with a right hand twist), but they "did not have a sufficient amount of agreement or disagreement to render an identification or elimination." (T. p. 192).

[Appellant] was ultimately apprehended in Charleston, West Virginia. (T. p. 198). The Allegheny County Sheriff's Office, along with the U.S. Marshall's Task Force, followed Sarah Linger on November 21, 2015 to the address where [Appellant] was found. (T. p. 199). After being taken into custody on November 23, 2015, [Appellant] was lodged in a West Virginia Correctional Facility. (T. p. 203). There, [Appellant] spoke with Allegheny County Police Homicide Detective Tom Foley, who presented [Appellant] with his Miranda[1] Rights Waiver Form. (T. p. 205). [Appellant] waived his Miranda Rights and made a

_____

[1] Miranda v. Arizona, 86 S.Ct. 1602 (1966).

- 3 -

verbal statement to police. He stated that he began staying in the Mooncrest Housing Development around July 4, 2015. (T. p. 207). While he was there, he began a serious relationship with Sarah Linger. (T. p. 207). Ms. Linger had "one or two children" to Victim. (T. p. 208). [Appellant] stated that Ms. Linger felt that Victim was upset about her relationship with [Appellant] and that Victim began to convey threats to Ms. Linger concerning [Appellant]. (T. p. 208). [Appellant] had never met or seen Victim prior to September 23, 2015. (T. p. 208). Due to the threats, [Appellant] purchased a gun off the streets two or three weeks prior to the shooting. (T. p. 208).

On the date of the shooting, [Appellant] stated that Ms. Linger was supposed to meet with Victim to exchange custody of their son. (T. p. 209). [Appellant] was not with Ms. Linger at that time, and stayed home. (T. p. 209). [Appellant] stated that "at some point he was walking down the road and he saw a few people that he knew." (T. p. 209). He stated that Victim's car came up in "a fast fashion or a hurried fashion and pulled up on the curb in front of him." (T. p. 209). He stated that a black male got out of the car and said "something to him to the effect of 'meet your maker.'" (T. p. 209). At that point, [Appellant] pulled the gun out of his hooded sweatshirt and started shooting toward the car. (T. p. 210). [Appellant] then ran in the opposite direction. (T. p. 210). [Appellant] admitted to hiding the gun in the brick wall and his clothing in a garbage can. (T. p. 211). [Appellant] stated that Ms. Linger drove him to a friend's house in Coraopolis where he stayed for a short period before fleeing to West Virginia. (T. p. 211).

Counsel for [Appellant] did not challenge the evidence as to the person not to possess charge. (T. p. 6).

In an effort to provide this [c]ourt with evidence concerning [Appellant's] state of mind on the date in question, [Appellant] presented the testimony of Sarah Linger. Ms. Linger has two children with Victim and is the girlfriend of [Appellant]. (T. p. 225). She also drove [Appellant] from his house on the date of the shooting and maintained contact after he fled the jurisdiction. (T. p. 199). Evidence was presented as to text message conversations that were between Ms. Linger and Victim where he made menacing statements concerning [Appellant]. (T. pp. 234-241). As of the date in question, there had been no threatening text messages for a period of approximately two

weeks. Neither Ms. Linger nor [Appellant] contacted the police in an effort to obtain any protection.

Trial Court Opinion (TCO), 9/20/17, at 3-7.

Based on these facts, the trial court convicted Appellant of the above-stated offenses. On September 16, 2016, Appellant was sentenced to 6½ to 13 years' incarceration for voluntary manslaughter, 3½ to 7 years' incarceration for persons not to possess a firearm, and 1 year of probation for tampering with physical evidence. Appellant filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The court filed its Rule 1925(a) opinion on September 20, 2017.

Herein, Appellant presents three issues for our review:

I.  Was the evidence insufficient to sustain the verdict of voluntary manslaughter when the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] was not justified in shooting the victim when [Appellant] reasonably believed that he was in danger of death or serious bodily harm and that he was protecting himself under the facts and circumstances known to him at the time of the incident?

II.  Was the verdict contrary to the weight of the evidence where, when viewed in its entirety, the evidence was not consistent with voluntary manslaughter since the evidence clearly showed the victim's conduct was antagonistic, hostile and vindictive, with a history of ill-will against [Appellant,] and that the victim intended to inflict serious bodily injury, if not death, upon [Appellant]?

III.  Was the sentence imposed manifestly excessive, unreasonable, and an abuse of discretion when the court focused exclusively on the seriousness of the offense to the exclusion of other pertinent factors?

Appellant's Brief at 9 (unnecessary capitalization and emphasis omitted).

Appellant first challenges the sufficiency of the evidence to sustain his voluntary manslaughter conviction. To begin, we note our standard of review:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Commonwealth v. Moreno, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. Commonwealth v. Hartzell, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. Moreno, supra at 136.

Commonwealth v. Koch, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant was convicted of voluntary manslaughter, defined as follows:

> (b) Unreasonable belief killing justifiable.--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b).

Appellant contends on appeal that the Commonwealth failed to disprove his claim that he acted in self-defense when he shot the victim. As our Supreme Court has explained,

> [w]hen there is evidence presented at trial that a killing was committed in self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. In order to meet that

burden, the Commonwealth must establish one of the following elements beyond a reasonable doubt:

> (1) that the defendant did not reasonably believe it was immediately necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary or reasonably appeared to him to be necessary to save himself from death, great bodily harm or the commission of a felony,

> (2) that the defendant provoked the use of force, or

> (3) that the defendant had a duty to retreat and that retreat was possible with complete safety.

See 18 Pa.C.S.[] [§] 505(b)(2)[;] Commonwealth v. Eberle, 474 Pa. 548, 379 A.2d 90 (1977)[.] As this Court stated in Eberle, "(e)stablishment beyond a reasonable doubt of any one of these three elements will insulate the conviction from a defense challenge to the sufficiency of the evidence in a case where self-protection is at issue." Id. at ... 379 A.2d at 93.

Commonwealth v. Fisher, 420 A.2d 427, 429 (Pa. 1980) (some internal citations omitted).

In this case, Appellant contends that the Commonwealth failed to establish any of the three, above-stated elements. Specifically, he maintains that the evidence clearly showed that he did not provoke the victim, and that he could not have retreated with complete safety. He also argues that the evidence proved that it was reasonable for him to believe that shooting the victim was immediately necessary for his own protection. In this regard, Appellant stresses that the victim had threatened him in the weeks before the incident and, on the day of the shooting, the victim "drove his car onto the sidewalk where [Appellant] was walking[,]" and then said to Appellant, "meet your maker." Appellant's Brief at 20. Appellant maintains that this

conduct by the victim demonstrated that his shooting the victim was justified and, thus, he should have been acquitted of the homicide charge.

Having carefully reviewed the record in this case, we disagree with Appellant. In particular, the video recording of the incident shows that the victim stopped his vehicle partially on the sidewalk several feet in front of Appellant and, as the victim began to exit his vehicle, Appellant immediately raised his arm and shot the victim. As the trial court noted, the victim was still "basically … an occupant of the vehicle when [Appellant] fired [the] first shot[,]" and the victim at that point had not "confronted [Appellant] with deadly force." N.T. Trial, 6/15/16, at 328. Indeed, the entire interaction between Appellant and the victim lasted only a second or two before Appellant fired his weapon. The totality of this evidence was sufficient for the trial court, as the fact-finder, to conclude, beyond a reasonable doubt, that Appellant used greater force than that which was immediately necessary to defend himself against the victim, thus disproving his claim of self-defense. See Commonwealth v. Smith, 710 A.2d 1218, 1220 (Pa. Super. 1998) ("The Commonwealth can meet its burden of negating the defendant's self[-]defense claim by proving that the defendant used greater force than appeared to be necessary.").

Next, Appellant avers that the trial court's verdict was contrary to the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial

court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

Commonwealth v. Houser, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Appellant essentially claims that the verdict was contrary to the weight of the evidence because the trial court failed to give proper weight to the threatening conduct of the victim prior to, and on the day of, the shooting. However, as the court explains, it did consider the victim's hostile conduct. See TCO at 8 (reiterating that the victim "previously made menacing comments concerning [Appellant,]" and that the "[v]ictim aggressively pulled his car over in front [of Appellant] as he was walking down the street"). Nevertheless, the court concludes that Appellant "was, at no point, confronted with deadly force" before he shot the victim. Id. Indeed, the court stresses that the victim "had not completely exited his vehicle before [Appellant] began shooting at him." Id. Accordingly, the trial court found that Appellant's "use of deadly force was not justified." Id. We ascertain no abuse of discretion in that decision.

Lastly, Appellant raises various claims concerning the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. Commonwealth v. Sierra, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

Commonwealth v. Evans, 901 A.2d 528, 533 (Pa. Super. 2006), appeal denied, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. Commonwealth v. Mann, 820 A.2d 788, 794 (Pa. Super. 2003), appeal denied, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Commonwealth v. Paul, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Sierra, supra at 912–13.

Commonwealth v. Griffin, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, our review of the record confirms that the majority of Appellant's sentencing claims were not raised in his post-sentence motion. Specifically, Appellant did not raise in that motion his assertions that (1) the sentencing guideline ranges utilized by the court were incorrect, see

Appellant's Brief at 27; (2) the "sentence imposed is inconsistent with the gravity of the offense, the protection of the public[,] and the rehabilitative needs of [Appellant,]" id. at 28; (3) the court improperly considered, as aggravating circumstances, factors that were already accounted for by the sentencing guidelines, id. at 29; and that (4) the court improperly focused solely on the gravity of the offense and did not adequately consider, or give proper weight to, Appellant's "particular characteristics" or certain mitigating circumstances of his case, such as Appellant's remorse, that he only purchased a gun because he feared for his life, and that he had been working and financially supporting Ms. Linger and her children prior to the shooting, id. at 30. Because none of these specific arguments were raised in Appellant's post-sentence motion, and he also fails to point to where they were noted in the record of the sentencing hearing, these claims are not preserved for our review. See Mann, supra.

Instead, the only sentencing argument that we will review is Appellant's assertion that the court imposed an excessive sentence because it failed to give adequate weight to the mitigating fact that he believed he was acting in self-defense when he shot the victim. See Appellant's Brief at 29. Appellant preserved this issue in his post-sentence motion. See Post-Sentence Motion, 9/20/16, at 3 (unnumbered). We also will consider this argument as raising a substantial question for our review. See Commonwealth v. Perry, 883 A.2d 599, 612 (Pa. Super. 2005) (finding

that an excessive sentence claim, in conjunction with an assertion that the court did not consider mitigating factors, raised a substantial question).

Nevertheless, Appellant is not entitled to sentencing relief based on this argument. Preliminarily, we note that Appellant's belief that he was acting in self-defense did mitigate his sentence, by lessening his overall criminal culpability from murder to manslaughter. Therefore, we reject his argument that the trial court abused its discretion by not further reducing his sentence based on that belief.

Additionally, the trial court explains in its opinion why other factors in this case called for a lengthier prison term. For instance, the court points out that Appellant was illegally carrying a firearm "for at least two to three weeks prior to this incident." See TCO at 10. Additionally, the court stresses that,

> [a] significant factor to this [c]ourt was the timing of [Appellant's] previous incarceration. [Appellant] was a convicted felon for crimes committed in West Virginia where he received a nine (9) year prison sentence. While this [c]ourt did not consider [Appellant's] alleged discretions while he was incarcerated, this [c]ourt cannot help but to consider that [Appellant] was released from confinement on July 4, 2015; [he] purchased a firearm approximately two months later; and [he] killed Victim on September 23, 2015. [Appellant] does not appear to be amenable to rehabilitation, as he returned to a life of crime shortly after his release from confinement. For these reasons, this [c]ourt's aggregate sentence of ten (10) to twenty (20) years was not, on its face, manifestly excessive and is consistent with the overall principles of the sentencing code.

Id. Given this explanation by the trial court, we discern no abuse of discretion in the standard-range sentence it imposed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2018